**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

---------------------------------------------------------X
In re:

FRANK S. GIACCIO,                    Chapter 7
                                     Case No. 10-50868
    Debtor.
---------------------------------------------------------X
Aqua Scapes, LLC,
    Plaintiff,

vs.                                  Adv. Pro. No. 10-5056

Frank S. Giaccio,
    Defendant.
---------------------------------------------------------X

*Appearances*:

| | |
|---|---|
| David S. Grossman, Esq.<br>P.O. Box 5289<br>Brookfield, CT  06804-5289 | Counsel for Plaintiff |
| Mark M. Kratter, Esq.<br>Kratte & Gustafson, LLC<br>71 East Avenue, Suite O<br>Norwalk, CT  06851 | Counsel for Defendant/Debtor |

**MEMORANDUM OF DECISION AND ORDER ON
§ 523(a) COMPLAINT**

### Introduction

The plaintiff, Aqua Scapes, LLC, brings this a four-count complaint against the defendant chapter 7 debtor under 11 U.S.C. §§ 523(a)(2)(A) & (B) and (a)(6) for an exception to the discharge of a debt, and a determination of the amount that non-discharged debt.  The defendant denies the allegations and asserts a "Special Defense" of accord and satisfaction which the plaintiff denies.  For the reasons that follow, judgment shall enter for the plaintiff.

**Background**

The plaintiff is a limited liability company engaged in the business of building swimming pools. Through its agent, Vincent Torcasio, a pool builder and mason, the plaintiff entered into a contract with the defendant for the installation and construction of a freeform swimming pool. (*See* Trial Exh. A at 1.[1]) The defendant, a contractor, agreed to pay the plaintiff, a sub-contractor, $70,100 for the pool installation and construction. (*See id.*) The defendant gave Torcasio a $7,000 down-payment. (Mar. 14, 2012 Oral Record[2] at 11:10 a.m.) It is undisputed that Torcasio also received two additional payments of $500 each. (Oral Record at 11:09 a.m.)

On September 3, 2008, the first day of the job, the defendant gave Torcasio a $58,000 check drawn on the account of "12 Star Development, LLC". (*See* Trial Exh. B; Oral Record at 11:19 a.m.) Torcasio testified that the defendant asked him to hold the check for a day or two so there would be funds to cover its payment. (Oral Record at 11:21 a.m.) Torcasio testified that, after the requested hold period, he attempted to cash the check on ten separate occasions over a two-week period, but to no avail. (Oral Record at 11:21:30 a.m.). Torcasio, thereafter, ceased working on the pool. He further testified that he waited that long before stopping work because it was not uncommon for one contractor to ask another contractor to wait a couple of days before cashing a check for a substantial amount of money. (Oral Record at 11:29:45 a.m.) He also stated that he was relying on the recommendation of the defendant made by other persons he highly regarded and with whom he had worked with in the past. (*Id.* at 11:29:30 a.m.)

On September 30, 2008, in an attempt to persuade Torcasio to finish the pool, and acknowledging that the $58,000 check was not good, the defendant promised to pay Torcasio $20,000 and gave him a check for that amount. (Oral Record at 11:22:45

---

[1] The only exhibits offered into evidence were by the plaintiff.

[2] For convenience, hereafter the court will cite to the oral record of the March 14, 2012 Trial as "Oral Record at [--:--]".

a.m.; *see also* Trial Exh. C.)  However, the $20,000 check was also worthless, and Torcasio again stopped working on the pool.  (*See* Trial Exh. C.)  He estimated the unfinished work would cost approximately $11,000 to complete.  (Oral Record at 11:26:15 a.m.)  Torcasio denied that there was any conversation about the offer and acceptance of the $20,000 being a total accord and satisfaction of the $58,000 due to his company.  (Oral Record at 11:37:30 a.m.)

In April 2009, Torcasio received a $20,000 bank check from the defendant.  (*See* Trial Exh. D; Oral Record at 11:27 a.m.)  It was accompanied by a cover letter which stated, *inter alia*, that the $20,000 check was "for restitution for Check #2855 dated 9/30/08 in the amount of $20,000 [*i.e.,*Trial Exh. C]".  (Trial Exh. D.)  There was no indication in the letter or on the check that this second $20,000 check was payment in full satisfaction of the monies owed to the plaintiff.  Torcasio cashed the second $20,000 check.  He received no further payment from the defendant.

The defendant has conceded that the $58,000 check to the plaintiff was "never made good".  (Oral Record at 12:08:45 p.m.)  The defendant further testified that he knew that the first $20,000 checked "bounced" (Oral Record at 12:29 p.m.), but he later "made it good" (*id.* at 12:29:50 p.m.) with the second $20,000 check because Torcasio performed the work, and he needed to be paid for the work he had done (*id.*).

## Discussion

*Accord and Satisfaction*

The court begins with the defendant's "Special Defense" of accord and satisfaction because if he is successful in proving that defense, there is no longer any debt to which the dischargeability issue would apply.  For that analysis, the court turns to the law of Connecticut since that is where the contract was entered into.

> When there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the defendant and the creditor to negotiate a contract of accord to settle the outstanding claim. . . .  Upon acceptance of the offer of accord, the creditor's receipt of

> the promised payment discharges the underlying debt and bars any further claim relating thereto, if the contract is supported by consideration. . . . [A] validly executed accord and satisfaction precludes a party from pursuing any action involving the original, underlying claim . . . . The defendant bears the burden of proving accord and satisfaction when it is pleaded as a special defense.

*Association Resources, Inc. v. Wall*, 298 Conn. 145, 187, 2 A.3d 873, 900-01 (2010) (*quoting Schoonmaker v. Lawrence Brunoli, Inc.*, 265 Conn. 210, 277, 828 A.2d 64 (2003), and omitting internal citations and quotation marks therein). A defendant must establish by a fair preponderance of the evidence the allegations of accord and satisfaction. *See, e.g., Credit Management Corp. v. Henderson*, 2007 WL 155178, *2 (Conn. Super. 2007); *Allegra v. Spargo*, 2000 WL 486839, *2 (Conn. Super. 2000).

The defendant has failed to meet his burden of proving accord and satisfaction. Quite simply, there is no evidence that the defendant and the plaintiff negotiated a contract of accord, the predicate for a defense of accord and satisfaction. To the contrary, Torcasio credibly testified that the offer of the first $20,000 check was "absolutely not" in full accord and satisfaction of the monies due the plaintiff. (Oral Record at 11:37:30 a.m.) It was to persuade him to return to the job after the $58,000 check did not clear. Obviously, the first $20,000 check could not support an accord and satisfaction defense since it was returned for insufficient funds. As to the second $20,000 check, Torcasio credibly testified that it was reimbursement for the first $20,000 check that had not cleared. (*Id.* at 11:37:40 a.m.).

Conversely, the defendant's testimony was often evasive and non-responsive, and the court gives it little weight. For example, the defendant did not persuasively testify as to why he gave Torcasio the first $20,000 check – only that he knew the $58,000 was not a good check when it was tendered. Moreover, the defendant's attempt to re-cast the second $20,000 as an accord and satisfaction is equally unavailing, especially when he testified it was sent to make good the first $20,000 check. (*id.* at 12:29:50 p.m.). The fact that the defendant characterized the second $20,000 check as restitution in his cover letter (*see* Trial Exh. D) is also unavailing.

Restitution is a different legal concept.[3] Neither the text of the defendant's cover letter nor any notation on the second $20,000 check put the plaintiff on notice that the defendant viewed that check as payment in full satisfaction of the debt owed.

Having concluded that there was never a negotiation of accord and satisfaction, a debt continues to be owed by the defendant to the plaintiff. The issue then is whether that debt is dischargeable.

*Amount of Debt*

There is no dispute that the original contract was for $70,1000. While the plaintiff alleges there were agreed "extras" totaling $4,000, there is no persuasive evidence to support that amount. Torcasio credibly testified that there was $11,000 of unfinished work so that the contract debt should be reduced by that amount. *See supra* at 3. The defendant's testimony that there was a greater amount of unfinished work was unpersuasive, *e.g.*, he offered no documents to support that claim, and he could not recall the names of the subcontractors he used to finish the pool. (Oral Record at 12:14:25 p.m., 12:30:10 p.m.)

It is undisputed that the plaintiff received the following payments in good funds: (1) a $7,000 down-payment; (2) two payments of $500 each; and (3) a $20,000 payment. Accordingly, the debt owed by the defendant to the plaintiff is $31,100.[4] Although the contract called for interest and attorney's fees, the record is silent as to

---

[3] *See, e.g., Black's Law Dictionary* at 1428 (9th ed. 2009) (defining "restitution" as "[a] body of substantive law in which liability is based not on tort or contract but on defendant's unjust enrichment").

[4]
| | | |
|---|---|---|
| | $70,100.00 | contract price |
| | $      0.00 | extras |
| less | $11,000.00 | value of incomplete work |
| less | $ 7,000.00 | down payment |
| less | $    500.00 | partial payment |
| less | $    500.00 | partial payment |
| less | $20,000.00 | partial payment |
| | **$31,100.00** | **Total Due** |

those items.

*Dischargeability*

The public policy promoted by bankruptcy allows "honest but unfortunate" defendants an opportunity to reorder their financial affairs and obtain a fresh start. *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998). That policy is accomplished by, *inter alia*, a discharge of certain pre-existing debts. See 11 U.S.C. § 523(a). The party objecting to the discharge of a debt bears the burden of proof by a preponderance of the evidence that the requirements of the relevant subsection, here §§ 523(a)(2)(A) & (B), and (a)(6), have been satisfied. See Fed. R. Bank. P. 4005; *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *In re Pierce*, 323 B.R. 21, 27 (Bankr. D. Conn.2005). It is widely held that debts claimed to be excepted from discharge should be narrowly construed. *See, e.g., In re Bonnanzio*, 91 F.3d 296, 300 (2d Cir.1996) (internal citations omitted); *In re Landrin*, 173 B.R. 307, 310 (Bankr.S.D.N.Y.1994).

In relevant part, § 523(a) provides:

> A discharge under section 727 . . . does not discharge an individual defendant from any debt—
> * * *
> (2) for money . . . to the extent obtained, by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the defendant's or an insider's financial condition;
> (B) use of a statement in writing—
> (i) that is materially false;
> (ii) respecting the defendant's or an insider's financial condition;
> (iii) on which the creditor to whom the defendant is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the defendant caused to be made or published with intent to deceive; . . .
> * * *
> (6) for willful and malicious injury by the defendant to another entity or to the property of another entity; . . . .

11 U.S.C. § 523(a)(2)(A) & (B), and (6). Since the plaintiff presented no evidence on its

subsection (a)(6) claim, the court need not consider that claim.

In order to prove that a debt is nondischargeable under § 523(a)(2)(A), a plaintiff must satisfy each of the following elements:

(1) the defendant made a false representation;

(2) the defendant knew it was false at the time it was made;

(3) the defendant made the representation with the intention and purpose of deceiving the creditor or inducing the creditor to act to the creditor's detriment;

(4) the creditor relied on the representation to the creditor's detriment; and

(5) the false representation was the proximate cause of the creditor's loss.

See, e.g., In re Roberti, 183 B.R. 991, 1005 (Bankr. D. Conn.1995).

Here, to induce the plaintiff to begin working on the pool, the defendant tendered the $58,000 check to Torcasio on the first day of the job. It was agreed that Torcasio would hold the check for a couple of days. However, having assessed the credibility of the witnesses and weighed the evidence, the court is persuaded that the defendant falsely represented that the $58,000 check would clear after that time period, and he knew the representation was false when he made it. Yet, relying on that representation, the plaintiff, through Torcasio, worked for several days for which it was not paid.

The conclusion that the defendant falsely induced the plaintiff to perform work on the pool is buttressed by the evidence that the defendant engaged in the same fraudulent practice a second time. As noted, after Torcasio stopped work on the pool, the defendant again induced Torcasio to believe that if he agreed to finish the pool, the plaintiff would be paid the *full* amount of the contract price. The inducement was supported by a $20,000 check. In reliance on that expectation, Torcasio returned to the job and performed an additional two days of work. Yet, the first tendered $20,000 check was also worthless. The fact that the second $20,000 check, being a bank check, cleared does not undermine the conclusion that the plaintiff was fraudulently induced to perform work on a pool to its financial detriment.

**Conclusion**

Either incident is sufficient, under § 523(a)(2)(A), to warrant the denial of the discharge of the debt owed to the plaintiff by the defendant. Therefore, the court need not consider the plaintiff's alternative ground for a denial of discharge, *i.e.*, § 523(a)(2)(B). Accordingly,

IT IS HEREBY ORDERED that the debt owed to the plaintiff by the defendant in the amount of $31,100.00 is not discharged.

IT IS FURTHER ORDERED that judgment shall enter in favor of the plaintiff.

Dated this 6th day of September, 2012 at Bridgeport, Connecticut.

BY: *[signature]*

Alan H. S. Shiff
United States Bankruptcy Judge